## THE EQUITABLE TRUST COMPANY

*v.*

## WARREN B. WILSON.

*Opinion filed October 25, 1902—Rehearing denied December 11, 1902.*

1. RECEIVERS—*when order appointing receiver cannot be collaterally attacked.* If the court has jurisdiction of the parties and of the subject matter of a foreclosure proceeding, its order appointing a receiver and directing the application of the rents and profits cannot be collaterally attacked upon the ground that it erroneously directed the rents and profits collected during the period of redemption to be paid to the holder of the certificate of purchase.

2. LIS PENDENS—*party accepting a deed pendente lite is bound by the decree.* One accepting a deed for the equity of redemption after the foreclosure sale and while the premises are in possession of a receiver under an order of court directing him to collect and pay the rents and profits during the period of redemption to the holder of the certificate of purchase, has no greater rights than his grantor, and is as much bound by the decree as he is; nor is it necessary that the proceedings be stayed until he be made a party by name and served with notice, or be otherwise brought into court.

*Wilson v. Equitable Trust Co.* 98 Ill. App. 81, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

DEFREES, BRACE & RITTER, for appellant:

The order of the court appointing the receiver, and at the same time directing these rents and profits to be paid to the holder of the master's certificate, and the subsequent order of court approving the act of the receiver in so applying the same, amount to an adjudication that the purchaser was entitled to such rents and profits, and, as such, is binding upon appellee, whose alleged title accrued *pendente lite.* The question as to who is the owner of the rents and profits in question is *res judicata,* and having been finally decided in the foreclosure suit cannot now be re-opened. 1 VanFleet on Former Adjudication, sec. 1; *Railroad Co. v. United States,*

168 U. S. 1; *Mitchell* v. *Bank*, 180 id. 471; Bennett on Lis Pendens, sec. 99.

The title of appellee having accrued *pendente lite*, he took subject to the rights of the parties to the suit, and is bound by the proceedings in the foreclosure case. *Reid* v. *Sheffy*, 75 Ill. App. 136; *Brachtendorf* v. *Kehm*, 72 id. 228; *VanZant* v. *VanZant*, 23 Ill. 485; *Dickson* v. *Todd*, 43 id. 504; *Ellis* v. *Sisson*, 96 id. 105; *Cable* v. *Ellis*, 120 id. 136; *Alwood* v. *Mansfield*, 59 id. 496.

The title which a purchaser takes after the commencement of the *lis pendens* is voidable, and is subject to the result of the pending litigation. *Durand* v. *Lord*, 115 Ill. 610; *Jackson* v. *Ketchum*, 8 Johns. 480; *Bishop of Winchester* v. *Paine*, 11 Ves. 197; *Kamp* v. *Forest*, 13 Ala. 120; *Stockett* v. *Goodman*, 47 Md. 54; *Sanders* v. *McDonald*, 63 id. 503; Bennett on Lis Pendens, secs. 99-167.

The orders of court affecting the disposition of these rents and profits constituted a final and binding decision as to their ownership. From the final order disposing thereof an appeal might have been taken or writ of error sued out to review same. The test is, was any further action of the court required to dispose of the case? If not, the order was final. 1 VanFleet on Former Adjudication, sec. 28; *Burlen* v. *Shannon*, 99 Mass. 200; *Begein* v. *Brehm*, 123 Ind. 160; *Boyd* v. *Olvey*, 82 id. 294.

WARREN B. WILSON, for appellee:

The owner of the equity is entitled, as against all persons, including the purchaser at foreclosure sale, to the rents and profits during the redemption period,—*i. e.*, from the date of sale under the decree for fifteen months. *Burleigh* v. *Keck*, 84 Ill. App. 607; *Stevens* v. *Hadfield*, 178 Ill. 420; *Davis* v. *Dale*, 150 id. 239; *Bogardus* v. *Moses*, 181 id. 554; *Lightcap* v. *Bradley*, 186 id. 510.

Every conveyance of real property given to secure the re-payment of money loaned is a mortgage, and whatever its terms may be, even if in form an absolute

deed, gives the creditor only the statutory rights and remedies of a mortgagee. Any further rights seemingly given by the terms of the mortgage are conclusively taken to have been procured by oppression and are void. *Insurance Co.* v. *White*, 106 Ill. 67; *Beam* v. *Ford*, 108 id. 16; 2 Starr & Cur. Stat. sec. 12, p. 2756; Jones on Mortgages, secs. 1039-1044; 3 Pomeroy's Eq. sec. 1193; 2 Washburn on Real Prop. 67; *West* v. *Reed*, 55 Ill. 245; *Jackson* v. *Lynch*, 129 id. 72.

The trust deed, whatever its terms, was merged in the final decree, which was in the usual form, directing the sale by the master, and the purchaser to be entitled to possession at the end of the redemption period, if not redeemed from. *Davis* v. *Dale*, 150 Ill. 239.

The sale was under the decree—not under the trust deed. The statute has abolished any sales under trust deed, except "in the manner provided for foreclosing mortgages, containing no power of sale, and no real estate shall be sold * * * except in pursuance of a judgment or decree of a court of competent jurisdiction." 2 Starr & Cur. Stat. sec. 17, p. 1642; *Ventres* v. *Cobb*, 105 Ill. 33.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery filed by appellee against the appellant company on the 24th day of April, 1900, in which it was represented, in substance, that the appellant company is the successor of the Jennings Trust Company; that said Jennings Trust Company, on the 17th day of July, 1890, was appointed receiver in the case of *Hathaway* v. *Baldwin et al.*, in the circuit court of Cook county, being a proceeding in equity to foreclose a trust deed on real estate; that the mortgaged premises were sold under a decree of the court on the 27th day of September, 1890; that the said trust company, as such receiver, collected the rents, issues and profits of the mortgaged premises from the date of sale thenceforth

during the time allowed for redemption, and paid the same to itself in its capacity as trustee under the will of John D. Jennings, deceased, upon the theory said Jennings, as holder of the certificate of purchase of the said mortgaged premises, was entitled to such rents, issues and profits during the period allowed for redemption; that the complainant in the bill (appellee) was the owner of the equity of redemption during a portion of the period thereof, and that the owner of the equity during the further period allowed for redemption had sold and assigned the rents for such other period to him, and prayed that a decree be entered requiring said trust company to pay to the complainant the rents, issues and profits so collected, and interest thereon from the date of collection. Upon a hearing the bill was dismissed for want of equity, but upon appeal the Appellate Court reversed the decree and remanded the cause, with directions to render a decree in favor of the complainant in the sum of $3995.05, together with interest thereon at five per cent per annum, compounded, from April 4, 1892. The trust company has prosecuted this appeal to reverse the judgment of the Appellate Court.

On the 12th day of February, 1890, one Franklin Hathaway, as trustee under a trust deed in the nature of a mortgage, and the Jennings Trust Company, as trustee under the will of John D. Jennings, deceased, filed a bill in equity in the circuit court of Cook county against A. D. Baldwin and a number of other persons to foreclose a trust deed in the nature of a mortgage, whereby said Baldwin had mortgaged certain property in the city of Chicago, known as 274 and 276 Madison street, to secure an indebtedness to said John D. Jennings, deceased, in the sum of $55,000 and interest. The parties defendant to the bill other than the said Baldwin were subsequent mortgage or judgment encumbrancers, holders of mechanics' liens, and one Andrew J. Parks was the owner of the title to the property subject to the encumbrances

thereon. The said Parks was personally served with summons in the cause. The appellee then had no interest in the mortgaged property and was not made a party to the proceeding. He subsequently obtained an interest in the equity of redemption from said Parks, at the time and in the manner hereinafter set forth. The trust deed sought to be foreclosed contained stipulations or covenants which the complainant in the bill of foreclosure contended mortgaged and pledged the rents, issues and profits of the mortgaged premises during the pendency of the litigation, and including the period of time allowed for the redemption of the property from a sale made under a decree of foreclosure, and also a stipulation that a receiver should be appointed by the court to take possession of said premises and collect the rents accruing therefrom. The complainant in said bill for foreclosure entered its motion for the appointment of a receiver, in accordance with the alleged stipulations and covenants of the mortgage. On the 17th day of July, 1890, after hearing the affidavits in support of the motion and considering the bill and the answers of the defendants thereto and the arguments of counsel for the respective parties upon the motion, the court "ordered, adjudged and decreed" that the said Jennings Trust Company be appointed receiver to receive the rents, issues and profits arising from the premises, and that the defendants to the bill for foreclosure should deliver up all leases to the premises to the receiver, and should, together with the tenants of the premises, attorn to the receiver and pay to it all the rents and profits of the premises, and that the receiver should have power to lease the premises from time to time, not exceeding one year, etc., and should pay the net proceeds of the rents, issues and profits to Anna Ball, the second mortgagee, and that upon the sale of the premises, in case a decree of foreclosure be entered, the net proceeds of such rents, issues and profits of the premises should be paid by the receiver to

the purchaser of the property at such sale, or to any one to whom such person should assign the certificate of purchase.

On the 21st day of November, 1890, the receiver, the Jennings Trust Company, made a report to the court showing the amounts received from the rents and profits of the premises and the disbursements for taxes, etc., and showing a net surplus above expenditures in the sum of $562.97, and that the receiver had paid the sum toward the satisfaction of the second mortgage indebtedness due to Anna Ball, as directed by the court in the order appointing the receiver. This report was approved, and three days thereafter, on November 24, 1890, a decree of foreclosure and order of sale was entered in the cause. The decree found the amount due each lienholder, that of Anna Ball being reduced in the amount paid her by the receiver, as shown by the report made three days before, and established the priority of the liens, (that of the trust deed to Hathaway, trustee for John D. Jennings, being the prior lien,) but contained no order having a reference to the receiver or relating to the rents, issues and profits of the mortgaged premises.

On the 27th day of December, 1890, the premises were sold by the master to one Thomas A. Hall for the sum of $72,751. Hall, in becoming such purchaser, was acting for the Jennings Trust Company, as trustee under the will of said John D. Jennings, deceased, to whose estate the mortgage indebtedness was due. The amount of the bid was paid to the master and a certificate of purchase was issued to Hall, which he immediately assigned to the Jennings Trust Company, as trustee under the will of the said John D. Jennings, deceased. On the 21st day of January, 1891, the master made report of the sale to the court, and reported also that out of the proceeds of the sale he had paid the full amount of the mortgage indebtedness secured to be paid by the said deed of trust executed by Baldwin to Hathaway, as trustee for John

D. Jennings, and also, as directed by the decree, had paid the mechanic's lien claimants and judgment creditors, and the encumbrances in favor of Anna Ball and James Bolton, in full, and had made a partial payment to Joseph B. Long; that the balance of the claim due to Long, and the claims of the Northwestern Safe and Trust Company, and James Stebbins, remained unpaid in whole.

The appellee had not yet become interested in any manner in the property. The equity of redemption was owned by Andrew J. Parks when the bill for foreclosure was filed. Parks was duly served with summons and answered the bill, and was represented by counsel in the hearing of the motion to appoint the receiver, which resulted in the appointment of the Jennings Trust Company as receiver, with power and authority to take possession of the mortgaged premises, collect the rents and to pay the net rents and profits to Anna Ball until a sale should be made by the master, then to pay such net rents, etc., to the holder of the certificate of purchase. This order also directed that the defendants should deliver all leases of the premises to the receiver, and should attorn to the receiver and pay to it the rents and profits. Parks complied with this order and the receiver entered into the possession of the premises under it.

On the 13th day of December, 1890, after the receiver's partial report had been filed and approved and after the decree of foreclosure and sale had been rendered, but before the sale was had, Parks conveyed his interest in the premises to one Samuel A. Jennings, who, on the 12th day of February, 1891, which was after the sale had been made and reported to and approved by the court, conveyed his interest in the property to the appellee by a quit-claim deed, which deed the appellee has not placed upon record. The premises were not redeemed from the sale, and the master executed a deed to the Jennings Trust Company, as trustee under the will of John D. Jennings, deceased. The Jennings Trust Company was re-

organized as the Equitable Trust Company, and in that name appears herein.

On the 4th day of April, 1892, the Jennings Trust Company, in its capacity as receiver in the foreclosure proceeding, submitted its final report to the court, as such receiver, for approval. Notice was served upon counsel for all the parties to the cause, including W. P. Black, solicitor for said Parks. The appellee was not a party to the record, but had received a quit-claim deed for the mortgaged property *pendente lite*. He had not placed his deed for the equity of redemption on record, nor had he in any way given any one notice that he had or claimed to have any interest in the matter. The report, upon a hearing, was on April 6, 1892, approved and the receiver discharged. It showed the receipts and disbursements from the date of the former report of the receiver. Among the disbursements, in different items, were payments to itself, in its capacity as trustee under the will of John D. Jennings, deceased, who was the holder and owner of the certificate of purchase. This report was approved and an order entered discharging the receiver. And so the matter was allowed to rest for more than eight years, and until the filing by the appellee of the bill in the case at bar, on the 24th day of April, 1900.

Whether the stipulation in the trust deed that a lien should be created against the rents, issues and profits of the mortgaged premises accruing during the period allowed for redemption is enforceable in a court of equity need not have consideration, for the reason the order of the court appointing a receiver, and directing such receiver to collect the rents, issues and profits during that period and to dispose of the amounts so collected according to the further directions of the order then entered, and the presentation of the final report of the receiver to the court showing the receipt of the rents, issues and profits during all of the time intervening between the appointment of the receiver and the expira-

tion of the time of redemption and the disbursement of the amounts so received, in accordance with the order appointing the receiver, including the payment by the receiver of all the rents received during the time of the period allowed for redemption to the holder of the certificate of purchase, and the approval of the report by the court and the discharge of the receiver, must be regarded as having the binding force of an adjudication of that question, so far as the appellee is concerned.

When this order was made so appointing the receiver and directing the disposition to be made of the rents of the mortgaged premises in accordance with the terms of the stipulation of the mortgage or trust deed, the equity of redemption was in one Andrew J. Parks. The appellee then had no interest in the premises. Parks was in possession of the premises. He was a party defendant to the foreclosure proceeding, had been duly served with summons and was represented by counsel. His solicitor appeared for him on the hearing of the motion to appoint a receiver, which resulted in the order that a receiver should be appointed with power to take possession of the mortgaged premises, receive and collect the rents thereof, thenceforth and during the period allowed for redemption, the same, when so collected by the receiver, to be applied in accordance with the terms of the stipulation in the mortgage or trust deed. He acquiesced in the order, and surrendered up the possession of the mortgaged property to the receiver in obedience to the requirements of the order. The order of the court appointing the receiver divested Parks of the possession of the premises and deprived him of the control thereof.

On December 13, 1890, and while the receiver was so in possession and after the decree awarding foreclosure and ordering the premises to be sold, the said Parks conveyed the mortgaged premises to Samuel A. Jennings. The premises were sold by the master on the 27th day of December, 1890, and Jennings did not attempt to inter-

fere with the possession of the receiver either before or after the sale, but about six weeks after the sale conveyed his interest to the appellee by quit-claim deed. The appellee did not attempt or seek to obtain possession of the premises, but permitted the receiver, without objection or complaint, to collect the rents and profits of the mortgaged premises from thence until the time for redemption. He gave no notice to any one that he had succeeded to the interest held by Parks, presented no objection to the final report of the receiver, and did not seek to appeal from the order entered by the court approving such final report or take any steps to have the same reviewed or set aside.

We think the orders of the court constitute an adjudication of the matters involved therein, not only as against Parks, but also as against the appellee.

The court had jurisdiction of the parties and of the subject matter of the foreclosure proceeding, and its order approving the final report of the receiver and discharging the receiver from further duty or responsibility was a final, appealable order, and, even had it been erroneous, is not subject to the collateral attack here attempted to be made against it. *Commercial Nat. Bank* v. *Burch,* 141 Ill. 519.

There is no force in the insistence of the appellee that such orders of the court do not constitute an adjudication as against him, for the reason he was not served with notice of the presentation of the report of the receiver. Parks was a party defendant to the proceeding and had been duly served with process, and counsel representing Parks was present when the order in question was entered. The appellee was a purchaser *pendente lite.* His purchase did not make it incumbent that the proceedings should be stayed until he should be made a party by name and served with notice or summoned in any way to come into court. He remained silent, and Parks, the party to the record, was properly treated as the representative

of the interest which he (Parks) had when the suit was instituted, and which the appellee held in subordination to the result of the proceeding. This doctrine has been so frequently declared that citation of authority is a work of supererogation. The appellee had no greater right than Parks, and the orders of the court constituted an adjudication as against Parks and also against the appellee. The view that he could ignore the judicial proceedings at the time they were had and taken, and nine years thereafter, by this an independent bill, have such proceedings reviewed collaterally in a court of equity, has not the sanction of any rule of law or equity.

The chancellor did not err in dismissing the bill of appellee for want of equity.

The judgment of the Appellate Court must be and is. reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*