**COWAN v. NIXON et al.**

No. 3157.

Court of Civil Appeals of Texas.
Beaumont.

June 29, 1937.

Rehearing Denied July 7, 1937.

Tom L. Beauchamp, of Tyler, for appellant.

C. E. Avery and C. B. Wallace, both of Center, for appellees.

O'QUINN, Justice.

Appellant, Cowan, brought this suit in the district court of Shelby county, Tex., against appellees C. L. Nixon, H. A. Stebinger, and Pickering Lumber Company to recover damages alleged to be due him by reason of failure to pay to him the value of ⅛ of the gas produced and sold from certain premises (1,145 acres of land the property of Pickering Lumber Company which it had leased to E. L. Chapman) which he claimed as the holder of an overriding royalty of ⅛, and to remove cloud from his asserted lease rights alleged to be cast by a conflicting lease covering the same premises. Prayer was "for his damages against each of the parties above alleged with the amounts therein specified, together with all costs, and for general relief." In his petition he stated that he sought no relief against the defendant Pickering Lumber Company, but and only because of the court's order, made it a "nominal" party defendant.

Appellees Nixon and Stebinger answered with pleas to the jurisdiction, alleging, in substance, that the Pickering Lumber Company was then under process of reorganization under section 77B of chapter 8 of the National Bankruptcy Act (11 U.S.C.A. § 207) pending in the District Court of the United States for the Western Division of the state of Missouri; that T. M. Barham had been appointed permanent trustee and ordered to take into his possession the properties of said Pickering Lumber Company, with full powers among others, by and with the consent and approval of the judge of said United States District Court, to lease the real estate of said company for exploration and development for oil, gas, and other mineral purposes, as well as to contract for such development; that pursuant to such authority said trustee had reduced to his possession the 1,145 acres of land described in appellant's petition, and that by and with the consent of said United States District Court said trustee had leased said 1,145 acres of land to appellee Stebinger, by virtue of which said Stebinger had contracted with and obligated himself to said trustee and said court to explore and develop same for oil, gas, and other minerals; that by virtue of all of which the said District Court of the United States for the Western Division of the state of Missouri had the matter of the 1,145 acres of land, that is, the leasing and development of same, and particularly Stebinger's lease and contract, under its prior, exclusive, and present jurisdiction; that the said United States District Court had enjoined all persons from interfering with the trustee's possession or prosecuting

any suit against the debtor, Pickering Lumber Company; that said Pickering Lumber Company was the common lessor and common source of title of appellant and appellees, and that if appellee Stebinger's lease was interfered with the royalties to Pickering Lumber Company would be lessened, and in any event the instant suit would interfere with the development of the properties of said Pickering Lumber Company, to wit, the 1,145 acres of land in question owned in fee by said company, the leases and royalties on which are here involved; that by virtue of all of said facts the court in which the instant suit was pending had no jurisdiction to hear and determine appellant's complaint.

Upon hearing on the pleas to the jurisdiction, it appearing that no permission was had of the federal District Court of Missouri, where the proceedings under section 77B of chapter 8 of the National Bankruptcy Act were instituted and were pending, to make the Pickering Lumber Company a party defendant to appellant's suit, the court sustained the pleas to the jurisdiction and dismissed the suit. Appellant brings this appeal from that order.

The record reflects that on January 1, 1936, appellant filed a suit in the district court of Shelby county, Tex., against appellees C. L. Nixon and H. A. Stebinger, seeking to recover on the same cause of action as alleged in the instant suit. On March 7, 1936, a plea of nonjoinder of a necessary party defendant Pickering Lumber Company, the owner of the land covered by the contesting lessees and which company held a reserved royalty, was sustained by the court and leave given appellant to amend, with the requirement that the amendment be made before July 6, 1936, the next term of the court. On July 7, 1936, no amendment having been filed, the court dismissed the suit. On August 14, 1936, appellant refiled his suit, alleging the same grounds for recovery of the same alleged damages sought, and made Pickering Lumber Company a party defendant, but declined to allege any right to recover any damages against it, and specially pleaded that no such recovery was sought, but that it was made a party defendant only because of the order of the court holding it to be a necessary party.

The pleas of appellees Nixon and Stebinger have above been mentioned, and that same were sustained on hearing and the suit dismissed.

The facts are that Pickering Lumber Company, a Delaware corporation, owned lands, among which was the 1,145 acres in Shelby county, Tex. It executed an oil and gas lease on this land to one E. L. Chapman on February 12, 1931. Appellant claims under this lease. By suit duly filed November 30, 1934, in the United States District Court for the Western Division of the state of Missouri, the Pickering Lumber Company, under section 77B of chapter 8 of the National Bankruptcy Act, was brought under process of reorganization, and T. M. Barham appointed trustee and authorized to take into his possession the properties of said company. He qualified as such trustee and took possession of the properties of said company. By authority of his powers as such trustee and with the consent of the court in the management and control of said company's property, he, as such trustee, on October 1, 1935, executed an oil and gas lease on the 1,145 acres of land to appellee H. A. Stebinger, who endeavored to develop the land and in fact discovered gas in paying quantities and for a time disposed of same, but which finally was abandoned. It is for a certain percentage of an overriding royalty in this disposed of gas that appellant seeks to recover. As we understand the record, the controversy, in the main, is the priority between the lease to Chapman, of February 13, 1931, executed by the Pickering Lumber Company, under which appellant claims, and the lease executed by the federal trustee to Stebinger on October 1, 1934, under which the effort to develop was made, and the royalty of ⅛ of the proceeds, if any, would be payable to Pickering Lumber Company through its trustee.

We think the judgment sustaining the pleas to the jurisdiction of the state court, district court of Shelby county, Tex., should be affirmed. Appellant, in his petition, alleged:

"Now comes Richard T. Cowan, who resides in Fort Worth, Texas, hereinafter called plaintiff, and, complaining of C. L. Nixon and H. L. Stebinger, who reside in Nacogdoches County, Texas, and of the Pickering Lumber Company, a Delaware corporation, with a permit to do business in Texas, which is now in the process of reorganization in the District Court of the United States for the Western Division of Missouri and of which Hon. T. M. Barham has been appointed permanent trus-

tee, and who resides in Jackson County, Missouri, hereinafter called defendants, would most respectfully represent and show," etc.

The order of the District Court of the United States for the Western Division of Missouri, approving the petition of Pickering Lumber Company, and allowing it the privileges and immunities under section 77B, chapter 8 of the National Bankruptcy Act, as well as the order appointing a trustee in the proceedings, were in evidence. T. M. Barham was appointed permanent trustee. The appellees H. A. Stebinger and C. L. Nixon, defendants below, claim through a lease from the trustee of said Pickering Lumber Company, dated October 1, 1934, to H. A. Stebinger, under which possession of the land in controversy, 1,145 acres, was taken. Appellant claims under and by virtue of a lease covering said land, executed by the Pickering Lumber Company to E. L. Chapman on February 13, 1931.

The federal District Court for the Western Division of Missouri, in its order placing all the property of Pickering Lumber Company in the hands of the trustee, among other things declared: "That said trustee be and he is hereby authorized and directed to take possession immediately of all and singular the property above mentioned, wheresoever situated or found." This order was later made final and permanent.

In its stay order, said court provided and ordered:

" *. * * all other persons claiming under the petitioning debtor, are each and all of them hereby enjoined and restrained from interfering with or disposing of said property and rights or any part thereof and from interfering with said Trustee in the possession, management and control of the same, and all persons whomsoever are enjoined from instituting or prosecuting any actions, suits or proceedings against the petitioning debtor or any actions, suits or proceedings affecting any property in which petitioning debtor is interested without the order and permission of this court. * * * "

The lease from the trustee Barham to Stebinger provided for drilling obligations with forfeiture of lease rights unless delay rentals were paid. The lease conveyed to Stebinger all of the minerals for this purpose, but reserved a $\frac{1}{8}$ royalty for the company, and the lease further provided that in case of failure of title in the lessor, lessor would refund any rentals or royalty from the land to which the title failed, and, further, that if the lessor owned a less interest in any subdivision or part of the land than the entire and fee-simple estate therein then the rentals and royalties as to such subdivision or part to which the title failed, should be paid the lessor in the proportion which the lessor's interest in such subdivision or part of said leased land bore to the whole undivided fee. Further, appellant alleged in his petition that H. A. Stebinger, lessee under the trustee, was a trespasser upon the leased premises and was drilling an oil/or gas well, or attempting to do so on the said premises without any right and authority to do so and that thereby had created a cloud upon the title of appellant for which he prayed relief.

It is obvious that the suit of appellant might in various ways interfere with the trustee's possession and management of the involved property. The possession of Stebinger, lessee under the trustee, was the possession of said trustee, and appellant alleges Stebinger to be a trespasser upon the land; that same places a cloud upon his, appellant's, title; that he, appellant, was entitled to receive the proceeds from the production and sale of the oil and gas from the land, which, if true, would divert from Pickering Lumber Company the $\frac{1}{8}$ royalty to be paid to it under the trustee's lease to Stebinger, as the title to Stebinger in his lease would to that extent fail and refund or reduction of the proportional amount would have to be made under the lease. It is seen that appellant claiming under the senior or earlier lease in point of time, and appellee Stebinger claiming under the junior lease in time, both said leases from and out of the common source of title, Pickering Lumber Company, said company was a necessary party to the suit below to determine the superiority of said leases, and to remove the cloud cast by the Stebinger lease. However, appellant endeavored to maintain his suit without making Pickering Lumber Company a party defendant, and when his initial suit was dismissed for that reason, he filed the instant suit making said company a party, but specifically says that he declines to recognize it as a necessary party, and refuses to pray for any relief against it, even as to the question of removal of cloud from his asserted title. Further, appellant sought a cancellation of the lease from Barham, trustee, to Stebinger, and the establishment of his asserted claim under the Chapman, or earlier lease, the effect

of which would be to cause a failure of title to that extent in the lease from Barham, trustee, to Stebinger, which failure would require Pickering Lumber Company to refund to Stebinger the ⅛ royalty to which it would otherwise be entitled, and this refund would exactly equal the ⅛ overriding royalty claimed by appellant under the Chapman lease, the Pickering Lumber Company thus losing its whole ⅛ royalty.

Our conclusion that the trial court's judgment should be affirmed is supported by: Baxter N. Foust, Administrator v. Munson Steamship Lines, Debtor (1936) 299 U.S. 77, 57 S.Ct. 90, 93, 81 L.Ed. ——; Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 55 S.Ct. 595, 71 L.Ed. 1110; Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 553, 78 L.Ed. 1020; Woodbury v. Pickering Lumber Company (D.C.W.D.Mo.) 17 F.Supp. 575, 576; In re 7000 South Shore Drive Bldg. Corporation (C.C.A.) 86 F.(2d) 499, 501.

In Ex parte Baldwin, supra, it is said:

"All property in the possession of a bankrupt of which he claims the ownership passes, upon the filing of a petition in bankruptcy, into the custody of the court of bankruptcy. To protect its jurisdiction from interference, that court may issue an injunction. The power is not peculiar to bankruptcy or to the federal courts. It is an application of the general principle that, where a court of competent jurisdiction has, through its officers, taken property into its possession, the property is thereby withdrawn from the jurisdiction of other courts. Having possession, the court may not only issue all writs necessary to protect its possession from physical interference, but is entitled to determine all questions respecting the same. [Citing numerous authorities.] The jurisdiction in such cases is exclusive of the jurisdiction of other courts, although otherwise the controversy would be cognizable in them. Murphy v. John Hofman Co., 211 U.S. 562, 569; 29 S.Ct. 154, 53 L.Ed. 327. In bankruptcy, this rule applies regardless of whether the property is located in the district in which the bankruptcy proceeding originated. The injunction to protect its possession may issue either from the court of original jurisdiction or from the federal court for the district in which the state court suit is brought or in which the plaintiff in that suit resides. Isaacs v. Hobbs Tie & Timber Company, 282 U.S. 734, 737, 738, 51 S.Ct. 270, 75 L.Ed. 645."

In Foust v. Munson Steamship Lines, supra, it is said:

"Section 77B (c) (10), (11 U.S.C.A. § 207 (c) (10), enlarging power conferred by section 11, broadly declares the judge 'may enjoin or stay the commencement or continuation of suits against the debtor until after final decree.' The exclusive jurisdiction given the court over the debtor and his property, subdivision (a), 11 U.S.C.A. § 207(a), does not imply that the commencement or the carrying on of suits against the debtor must be enjoined or that all claims must be referred to a master for consideration and report. * * *

"The power to stay does not imply that it is to be, or appropriately may be, exerted without regard to the facts. The granting or withholding of injunction is left to the discretion of the court."

In the South Shore Drive Corporation case, supra, it is said:

"True it is that, upon the filing of the petition under section 77B and approval of the same, exclusive and paramount jurisdiction over the res of the estate passed to the court of bankruptcy, which thereafter had the unimpeded right—indeed, the obligation —to draw unto itself the power of disposition of all controversies relating thereto. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; In re Sterba (C.C.A.7) 74 F.(2d) 413; Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L. Ed. 1243, 90 A.L.R. 1215. This power being vested exclusively in the national courts, under the grant from the states in the Federal Constitution, those courts may not be impeded or interfered with in discharging their duties pursuant to legislation enacted by Congress under the bankruptcy power, in respect to anything pertaining to the administration of the assets."

In Woodbury v. Pickering Lumber Company, supra, the court granting the stay order in the instant case, in interpreting an order identical with the one under consideration, said:

"After a prolonged administration of the estate of Pickering Lumber Company, in equity, a petition was filed for reorganization under section 77B, Bankr. Act (11 U.S.C.A. § 207). When that was done, it divested all courts other than the court where the suit was filed of any jurisdiction whatever over any of the properties of Pickering Lumber Company. The title to the property vested in the trustees, and no question or controversy could be litigated

save in the court administering the property. This means that the title to the property the claimant now seeks to reach is vested in the trustees. Even if the claimant had not heretofore submitted to the jurisdiction of this court, it would be compelled to do so now, for the reason that the property has been withdrawn from the custody of the ancillary receiver. The property is in the custody of the trustees of this court, and therefore in custody of the law.

"It would not be proper to dissolve the injunction and permit the claimant to interfere in any way with the bank deposit made in lieu of the physical properties originally attached. If the claimant has any rights, it will be necessary for it to litigate such rights here.

"The motion to dissolve will be overruled. It is so ordered."

The above ruling was made in passing upon a motion to dissolve an injunction in an order identical with the one here considered, and by the court making each of the orders, the federal court first acquired jurisdiction of the matter, in bankruptcy proceedings, and ordered the injunction to protect its jurisdiction over the res in possession of the court and trustee appointed by the court, and to prevent interference with the administration of the properties of the debtor Pickering Lumber Company. That it had the power to do so is shown by the authorities cited, supra. Appellant made no effort to procure consent of the court to make the Pickering Lumber Company a party or to litigate his claim in the court where he filed the instant suit. He merely says that there is nothing involved in this suit making Pickering Lumber Company a necessary party, and hence no grounds upon which to challenge the jurisdiction of the court to hear and determine the matter.

From what we have said supra, the judgment sustaining the pleas to the jurisdiction should be affirmed, and it is so ordered.

Affirmed.

The above was written as the expression of the full court, but on further consideration Chief Justice WALKER and Associate Justice COMBS are of the opinion that the judgment of the lower court should be reversed and the cause remanded for a new trial on appellant's petition, on the following grounds:

(a) Appellant prayed for no relief against Pickering Lumber Company, and, therefore, it has no place in this litigation.

(b) On the facts pleaded Pickering Lumber Company was not a necessary party to this litigation, though probably a proper party.

(c) The authorities cited and reviewed as supporting the judgment are not in point because the bankrupt, Pickering Lumber Company, was not in possession of the property in controversy, nor was its trustee in possession. Therefore, the bankrupt court did not have possession or right of possession. It is our conclusion that the judgment of the lower court should be reversed and the cause remanded for a new trial on appellant's petition.

The judgment is accordingly reversed and the cause remanded. I dissent from that order, and file the above opinion as my dissent.